UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

EVAN R. MOORE,

    Plaintiff,

  v.

LT. HEARLE and P.O. BUONO

    Defendants.

---

05 Civ. 1807 (SCR)

MEMORANDUM
DECISION AND ORDER

**STEPHEN C. ROBINSON, United States District Judge.**

  Plaintiff, Evan R. Moore, filed this action against Lieutenant Christopher Hearle and other officers who are no longer defendants in the case, alleging that Defendants violated his constitutional rights when they stopped and searched him on September 12, 2003. On February 10, 2006, Defendant Hearle moved for Summary Judgment and that motion was fully briefed on March 23, 2006. For the reasons set forth in this Memorandum Decision and Order, the Court grants in part and denies in part Defendant's Motion for Summary Judgment.

I

BACKGROUND

**A. Facts**

  On Friday, September 12, 2003, while on patrol in an unmarked police car in New Rochelle, Lt. Hearle observed Mr. Moore engaging in a hand-to-hand exchange with an unknown man on Coligni Avenue near the intersection of Coligni Avenue and Brook Street. (Affidavit of Lt. Christopher Hearle ("Hearle Aff.") ¶ 9, 10.) Hearle knew that Coligni Avenue,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

05 Civ. 1807 (SCR)

where the exchange took place, was a "hot-spot" for narcotics sales and related criminal activity. (*Id.* ¶ 4, 9.)

Hearle was able to recognize Moore and was aware that Moore was previously convicted of narcotics violations including several convictions for possession of a controlled substance and at least one conviction for possession with intent to sell an illegal drug. (*Id.* ¶ 6-7, 10.) Moore was wearing shorts and a white t-shirt at the time. (Moore's Affidavit/Affirmation in Opposition to the Motion for Summary Judgment ("Moore Aff.") at 2.) Hearle believed that Moore was acting in a nervous fashion and was looking around and over his shoulder. (Hearle Aff. ¶ 9.) Following the hand-to-hand exchange, Hearle observed the other man walking quickly away from Moore. (*Id.* ¶ 9.)

At the time of the exchange, Hearle had been informed that Moore had a habit of carrying crack cocaine hidden in his buttocks. (*Id.* ¶ 7.) Based upon his experience, Hearle also knew of this general practice of drug dealers – especially those who sell on the street – to hide illegal drugs inside their pants, sometimes wedged between the cheeks of their buttocks. (*Id.* ¶ 5.)

After witnessing the hand-to-hand exchange, Officer Evangelos Geralis, who was driving the police car that Hearle was in, turned the car onto Coligni Avenue in search of Moore and the other man. (*Id.* ¶ 13.) After turning onto Coligni Avenue, Hearle observed Moore outside of 31 Coligni Avenue, standing with Junior Ballentine and Gaeia Watts, both of whom Hearle knew to be drug offenders. (*Id.* ¶ 13-14.)

Upon arriving at 31 Coligni Avenue, Hearle and Geralis exited their unmarked vehicle and approached Moore. (Moore Aff. at 2.) According to Moore, Hearle asked him what he was doing and whether he had drugs on him. (*Id.*) Moore claims that the officers then had him empty the contents of his pockets onto the hood of the police car. (*Id.*)

05 Civ. 1807 (SCR)

According to Hearle, the officers asked him a series of questions: What are you doing? Where are you coming from? Where are you going? (Hearle Aff. ¶ 15.) Hearle claims that Moore provided inconsistent answers to the officers' initial questions, (*Id.* ¶ 15), at which point the officers asked Moore if he was in possession of any illegal drugs. (*Id.* ¶ 16.) Hearle claims that Moore's response was "I ain't got nothing, go ahead and search me," or words to that effect. (*Id.* ¶ 16.) Only then does Hearle claim to have asked Moore to empty the contents of his pockets on the hood of the police car, which he did. (*Id.* ¶ 17.) Hearle then claims to have directed Geralis to search Moore's pockets. (*Id.* ¶ 18.) Geralis, in turn, asked Moore to place his hands on the police car and Moore complied. (*Id.* ¶ 19.) Geralis then patted down the outside of Moore's pockets and felt inside each of them to confirm that they were empty. (*Id.* ¶ 19.) No illegal drugs were found in Moore's pockets. (*Id.* ¶ 19.) Hearle claims that the search ended at that time and that the officers resumed their patrol. (*Id.* ¶ 20.)

However, Moore claims that the search did not stop after the unsuccessful pat-down. Instead, Moore claims that Hearle had him bend over while the officers pulled his shorts away from the back of his waist and used a flashlight to look inside his pants, and in between his buttocks. (Moore Aff. at 2.) Moore says he was then ordered to pull down his pants, bend over, spread his buttocks with his hands and jump up and down. (Compl. at 3; Moore Aff. at 2.) According to Moore, all of this took place in public, while pedestrians were passing by. (Moore Aff. at 1.) Moore asserts that the search and seizure were not consensual. (*Id.*)

### B. Procedural Posture

On February 4, 2005, Mr. Moore filed a complaint in this Court against Defendant Hearle and others who are no longer a part of this action. (Docket entry 2.) Moore filed an amended

3

05 Civ. 1807 (SCR)

complaint on April 4, 2005. Hearle filed his answer to Plaintiff's complaint on June 8, 2005, (Docket entry 7), and an amended answer on June 24, 2005 (Docket entry 8). On February 10, 2006, Hearle filed this Motion for Summary Judgment, (Docket entry 17), and that motion is fully briefed.

## II

## DISCUSSION

### A. Standard Of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Specifically, the party seeking summary judgment has the burden of demonstrating that no genuine issue respecting any material fact exists. *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995). When deciding a summary judgment motion, the court must resolve all ambiguities and draw all factual inferences in favor of the party opposing the motion. *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). The question is whether, in light of the evidence, a rational jury could find in favor of the nonmoving party. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Summary judgment must be denied, therefore, if the court finds "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment will also be denied if the factual evidence, opposed or unopposed, does not show that the moving party is entitled to judgment as a matter of law. *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*,

05 Civ. 1807 (SCR)

373 F.3d 241, 244 (2d Cir. 2004); *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

## B. The Reasonableness Of The Seizure

Defendant must prove that the seizure of Mr. Moore was supported by probable cause because the officers did not have a warrant to arrest Moore, it was not a consensual encounter because Moore has denied acquiescence, and the stop was not sufficiently limited to be investigatory in nature.

A warrantless arrest must be supported by probable cause or else it violates the Fourth Amendment.[1]  U.S. CONST. amend. IV; *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983). The government bears the burden of proof to establish the existence of probable cause to arrest. *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008). "Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Patrick*, 899 F.2d 169, 171 (2d Cir. 1990) (citing *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)).

This Court finds that taking all facts in the light most favorable to Moore, Lt. Hearle had probable cause to believe that a crime had been committed and no rational jury could find otherwise. Lt. Hearle's observation of a hand-to-hand exchange in a high crime area, Moore's nervous behavior, the fact that the other man hurried away from the exchange, Hearle's knowledge of Moore's criminal history, and the fact that Moore was ultimately found in the

---

[1]  State law governs the validity of this warrantless arrest, *see United States v. Di Re*, 332 U.S. 581, 589 (1948), and the New York criterion for such an arrest conforms to the federal standard of probable cause. *See United States v. Rosario*, 543 F.2d 6, 8 n.1 (2d Cir. 1976).

05 Civ. 1807 (SCR)

company of two other known drug offenders, is sufficient to support a finding of probable cause to arrest. *See People v. Colselby*, 240 A.D.2d 227, 227 (N.Y. App. Div. 1997) (probable cause found where officers observed hand-to-hand transactions in a drug prone neighborhood, even though the objects transferred could not be precisely identified.) Defendant's motion for summary judgment as to the legality of the seizure is granted because Moore's seizure was supported by probable cause and was not in violation of his Fourth Amendment rights.

### C. The Reasonableness Of The Search

Moore claims that the search, conducted incident to his arrest, was unreasonable. Generally, officers are justified in conducting searches incident to a lawful arrest in order to ensure the safety of officers as well as to prevent the destruction of evidence. *United States v. Robinson*, 414 U.S. 218, 234 (1973). Nonetheless, the Fourth Amendment requires that all searches must be reasonable. *See Bell v. Wolfish*, 441 U.S. 520, 558 (1979). While the pat-down and search of Moore's pockets was reasonable pursuant to the arrest, the court must also consider the reasonableness of the alleged strip search.

In *Bell* the Supreme Court addressed the reasonableness of strip searches and, in particular, held that courts must apply a "test of reasonableness" that requires consideration of "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 559.

As to the justification prong of the *Bell* test, the Second Circuit has held that a "strip search is by its very nature a highly intrusive invasion, and, as such, requires particular justification." *Wilson v. Aquino*, 233 F. App'x 73 (2d Cir. 2007) (internal quotations and citations omitted) (citing *Rivera v. United States*, 928 F.2d 592, 607 (2d Cir. 1991) and *Bell*, 441

6

05 Civ. 1807 (SCR)

U.S. at 559). The facts show that Hearle had a basis for conducting the strip search, including his knowledge of the general habit of street dealers to hide drugs in between their buttocks, (Hearle Aff. ¶ 5), and his specific knowledge that Moore himself had a habit of carrying crack cocaine hidden in his buttocks (*id.* ¶ 7). The scope of the strip search was also reasonable because it was limited to the pulling down of Moore's shorts and the inspection of the buttocks area with a flashlight. The scope of the search was narrowly designed to investigate the belief that drugs were hidden in his buttocks.

Nonetheless, there is a question of material fact as to whether the manner and location of the strip search was reasonable, the remaining two prongs of the *Bell* test. Taking the facts in the light most favorable to Moore, the non-moving party, this Court cannot find for the Defendant as a matter of law because reasonable jurors could find that the officers acted unreasonably by conducting the search in an overly intrusive manner and in an improper location when they requested Moore to pull down his pants, spread his buttocks, and jump in a public area where observers and pedestrians could see his exposed lower body. While pulling back someone's pants to inspect the inside of their pants in public has been found reasonable, *People v. Jones*, 3 Misc. 3d 481, 485-86 (N.Y. Sup. Ct., Bronx County 2004), a partial strip search in a public place where passersby can see a person's naked body is not reasonable absent serious safety concerns. *See Jean-Laurent v. Hennessey*, No. 05-CV-1155, 2008 WL 3049875, at *13 (E.D.N.Y. Aug. 1, 2008); *People v. Mitchell*, 2 A.D.3d 145, 148 (N.Y. App. Div. 2003). Given that there was no apparent safety concern arising from Moore's arrest, the issue of whether Moore was actually exposed to the public during the search incident to his arrest is a material question of fact, precluding summary judgment for the Defendant.

05 Civ. 1807 (SCR)

## D. Qualified Immunity

Under the doctrine of qualified immunity, government officials are shielded from liability flowing from their performance of discretionary functions as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Livant v. Clifton*, 272 F. App'x 113, 115 (2d Cir. 2008) (quoting *Wilson v. Layne*, 526 U.S. 603, 609 (1999)). In considering a claim of qualified immunity, the Court engages in a two-step analysis starting with a determination of "whether the plaintiff has alleged the deprivation of an actual constitutional right." *Id.* (citing *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). If Plaintiff has alleged a violation of a constitutional right, the Court then determines if (1) the officers' conduct violates "clearly established" rights of which a reasonable person would have known, or (2) it was "objectively reasonable for them to believe their actions were lawful at the time." *Id.* at 115 (internal citations omitted). Although this framework for analyzing qualified immunity claims is no longer mandatory, *Pearson v. Callahan*, 129 S. Ct. 808, 818-821 (2009), the Court will use it as a guide for the convenience of the parties and this Court.

Granting Defendant's motion for summary judgment on grounds of qualified immunity is proper "only 'if the court finds that the asserted rights were not clearly established, or if the evidence is such that, even when it is viewed in the light most favorable to the plaintiff[ ] and with all permissible inferences drawn in [his] favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right.'" *See Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003) (citations omitted).

The right to be free from unreasonable searches, including public strip searches, is a clearly established constitutional right. *See Jean-Laurent*, 2008 WL 3049875, at *17; see also*

05 Civ. 1807 (SCR)

*Mitchell*, 2 A.D.3d at 145. Therefore, there is no doubt that if the officers did in fact conduct a public strip search, as Moore has alleged, Hearle violated one of Moore's clearly established constitutional rights. Thus, to grant summary judgment in this case, the Court must find that no rational jury could find Hearle's conduct in performing a public strip search was unreasonable. There existence of a material question of fact regarding the reasonableness of the search precludes summary judgment in favor of the Defendants. The motion for summary judgment is therefore denied as to qualified immunity for the public strip search.

### III

### CONCLUSION

Defendant Hearle is entitled to summary judgment on the reasonableness of the seizure. However, summary judgment is denied as to the reasonableness of the public strip search and on qualified immunity because there is a set of facts that, if shown, would entitle Moore to relief. Accordingly, Hearle's motion for summary judgment is granted in part and denied in part.

The Clerk of the Court is directed to close docket entry 17.

*It is so ordered.*

Dated: June 11, 2009
White Plains, New York

Stephen C. Robinson
United States District Judge